# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| MARCUS ORLANDO WHITE, | ) | CASE NO. 1:20-cv-236 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| ANDREW SAUL, | ) | |
| *Comm'r of Soc. Sec.*, | ) | |
| | ) | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | ) | |
| | ) | |

Plaintiff, Marcus Orlando White (hereinafter "Plaintiff"), challenges the final decision of

Defendant Andrew Saul, Commissioner of Social Security (hereinafter "Commissioner"),

denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security

Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423,

1381 *et seq*. ("Act"). This court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is

before the undersigned United States Magistrate Judge pursuant to consent of the parties. (R. 9).

For the reasons set forth below, the Commissioner's final decision is AFFIRMED.

## I. Procedural History

On May 17, 2017, Plaintiff filed his applications for DIB and SSI, alleging a disability

onset date of May 2, 2010.[1] (R. 8, Transcript ("Tr.") 451-459). The application was denied

---

[1] The Administrative Law Judge applied the doctrine of *res judicata* to Plaintiff's claims for the period preceding March 2, 2016, as a prior application for disability benefits was denied after a hearing on that date. (Tr. 18-19, 245-264).

initially and upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 265-397). Plaintiff participated in the hearing on January 22, 2019, was represented by counsel, and testified. (Tr. 40-74). A vocational expert ("VE") also participated and testified. *Id*. On April 10, 2019, the ALJ found Plaintiff not disabled. (Tr. 31). On January 13, 2020, the Appeals Council denied Plaintiff's request to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (Tr. 1-7). On February 4, 2020, Plaintiff filed a complaint challenging the Commissioner's final decision. (R. 1). The parties have completed briefing in this case. (R. 12 & 13).

Plaintiff asserts the following assignments of error: (1) the ALJ erred by excluding the use of an assistive device from the residual functional capacity ("RFC") assessment; (2) the ALJ erred in determining Plaintiff can perform light exertional work; and, (3) the ALJ erred by finding the opinions of the nonexamining State Agency physicians more persuasive than the opinion of a treating physician. (R. 12).[2]

## II. Disability Standard

A claimant is entitled to receive benefits under the Social Security Act when he establishes disability within the meaning of the Act. 20 C.F.R. § 404.1505 & 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when he cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) and 416.905(a); 404.1509 and 416.909(a).

---

[2] The court sets forth the relevant evidence in its analysis of Plaintiff's assignments of error.

The Commissioner determines whether a claimant is disabled by way of a five-stage process. 20 C.F.R. § 404.1520(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at the time he seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that he suffers from a medically determinable "severe impairment" or combination of impairments in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits ... physical or mental ability to do basic work activities." *Abbott*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment (or combination of impairments) that is expected to last for at least twelve months, and the impairment(s) meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment(s) does not prevent him from doing past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment(s) does prevent him from doing past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g) and 416.920(g), 404.1560(c).

### III. Summary of the ALJ's Decision

The ALJ made the following findings of fact and conclusions of law:

1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2016.

2.  The claimant has not engaged in substantial gainful activity since May 3, 2016 (20 C.F.R. § 404.1571 *et seq.*, and 416.971 *et seq.*).

3.  From March 3, 2016 through the date last insured, the claimant had the

following severe impairments: Degenerative disc disease; degenerative joint disease; hypertension; and a hearing impairment. Beginning on May 15, 2017, the claimant has the following severe impairments: Degenerative disc disease; degenerative joint disease; hypertension; hearing impairment; post laminectomy syndrome; vertigo/Meniere's disease; and depression (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, from March 3, 2016 through the date last insured, the undersigned finds that the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except that he was required to avoid working in a noisy environment.

6. After careful consideration of the entire record, beginning May 15, 2017, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except this claimant could frequently climb ramps and stairs; this claimant could not climb ladders, ropes, or scaffolds; this claimant could frequently balance, stoop, crouch or crawl; this claimant should not work in noisy environments; this claimant must avoid all exposure to working around dangerous machinery or unprotected heights; this claimant can understand, recall, and carry out simple instructions; this claimant can perform simple routine tasks; this claimant can sustain attention, concentration, persistence and pace to perform simple routine tasks that do not have fast-paced performance or strict production quota requirements; this claimant can carry out tasks in situations where duties are relatively static and changes can be explained; and this claimant can adapt to stresses of routine work that do not involve timed tasks or rate quotas.

7. The claimant is capable of performing past relevant work as a mail sorter and cannery worker. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

8. The claimant has not been under a disability, as defined in the Social Security Act, from May 2, 2010, through the date of this decision (20 CFR 404.1520(1) and 416.920(f)).

(Tr. 21, 22, 24, 25, 31).

4

## IV. Law and Analysis

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. (*Id.*) However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

### B.   Plaintiff's Assignments of Error

The court addresses Plaintiff's assignments of error out of order, as it is analytically more coherent to do so.

#### 1. Treating Source Opinion of Dr. Cohen

In the third assignment of error, Plaintiff argues the ALJ erred by assigning greater weight to the opinions of the State Agency physicians than to the treating source opinion of Nicholas

Cohen, M.D., as set forth in a December 7, 2018 medical source statement. (R. 12, PageID# 1771-1776). The Commissioner argues that Dr. Cohen did not actually complete the medical source statement at issue, and therefore, the ALJ properly discounted it. (R. 13, PageID# 1797-1798).

"Provided that they are based on sufficient medical data, 'the medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference.'" *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002) (quoting *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985)). In other words, "[a]n ALJ must give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in the case record.'" *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (*quoting* 20 C.F.R. § 404.1527(d)(2)). If an ALJ does not give a treating source's opinion controlling weight, then the ALJ must give "good reasons" for doing so that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *See Wilson*, 378 F.3d at 544 (*quoting* Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *5).

The "clear elaboration requirement" is "imposed explicitly by the regulations," *Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 400 (6th Cir. 2008), and its purpose is "in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that [her] physician has deemed [her] disabled and therefore might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Wilson*, 378 F.3d at 544 (*quoting Snell v. Apfel*, 177 F.3d 128,

6

134 (2d Cir. 1999)). "An example of a good reason is that the treating physician's opinion is

'unsupported by sufficient clinical findings and is inconsistent with the rest of the evidence.'"

*Conner v. Comm'r of Soc. Sec.*, 658 Fed. App'x 248, 253-254 (6th Cir. 2016) (*citing Morr v.*

*Comm'r of Soc. Sec.*, 616 Fed. App'x 210, 211 (6th Cir. 2015)); *see also Keeler v. Comm'r of*

*Soc. Sec.*, 511 Fed. App'x 472, 473 (6th Cir. 2013) (holding that an ALJ properly discounted the

subjective evidence contained in a treating physician's opinion because it too heavily relied on

the patient's complaints).

It is undisputed that Dr. Cohen professionally treated Plaintiff in his capacity as a physician,

as the ALJ expressly notes he was a "treating provider." (Tr. 30). The ALJ's decision addressed

the December 7, 2018 medical source statement ostensibly completed by Dr. Cohen as follows:

> Nicholas Cohen, M.D., treating provider, opined in December 2018 that the
> claimant could lift and carry five pounds occasionally; could sit for two to three
> hours total in an eight-hour workday; could stand and/or walk for twenty minutes
> total in an eight-hour workday; could occasionally climb and rarely balance,
> stoop, crouch, kneel, and crawl; could occasionally reach, frequently push, pull,
> and perform gross manipulation, and rarely perform fine manipulation; and needs
> to be able to alternate positions between sitting, standing, and walking at will (Ex.
> B29F/2-3). The undersigned has considered this opinion and finds that it is not
> persuasive. The findings are mostly not supported as they are not accompanied by
> exam findings. The undersigned finds that the opinion is mostly not consistent
> with the record as a whole. **Moreover, the claimant testified that a social
> worker completed the form** (Hearing Testimony). The claimant reported that he
> has difficulty performing exertional and postural activities due do his back and
> shoulder pain (Ex. B4E/6-7; Hearing Testimony). Upon examination, he was
> observed to have some limitations in his left shoulder, but generally had good
> mobility in his right shoulder and appropriate strength in his bilateral upper
> extremities. Although the claimant had somewhat antalgic gait and ambulated
> with an assistive device, imaging of the claimant's back showed no evidence of
> significant nerve compression or stenosis. Examination of the claimant's back
> also showed mostly normal strength, sensation, and no signs of nerve tension (Ex.
> B15F/1-4; B17F/1-5; B19F/1-4; B21F/2-6; 22F/1-4). Therefore, the above
> opinion is mostly not persuasive, as it is not consistent with or supported by
> objective evidence of record.

(Tr. 30) (emphasis added).

On December 7, 2018, the date the medical source statement was completed, Dr. Cohen's treatment notes state: "You have a form from your lawyer's [sic]. I'll ask out social worker to help fill this out." (Tr. 1598). Plaintiff's hearing testimony confirms that a social worker completed the medical source statement, and not Dr. Cohen. In addition, Plaintiff further testified that the social worker completed the form based on his self-reported answers, as demonstrated by the following exchange:

> Q:  Okay. Just making sure I don't have any other questions, so just bear with me for a moment, please. Okay, when you, when you filled out Dr. Cohen has, he signed a form, who, who helped fill that form out, or how was it filled out? Did you talk to somebody about it? How -- did they perform testing? What happened?
>
> A:  What form was that, Your Honor?
>
> Q:  There's a, a form in the record that says you can stand for a certain amount of time, sit for a certain amount of time, that type of thing, like a capacity form. It's in the record -- was it at 29, at 29F, so I was asking if you recall who filled that out?
>
> A:  No, somebody helped me because I didn't understand it.
>
> Q:  So you filled out the form and then the doctor signed it, is that —
>
> A:  No, someone else filled out the form.
>
> Q:  Okay. I know there's a note that says a social worker, was it a social worker?
>
> A:  Yes, sir.
>
> Q:  Okay. How did they help you fill out the form?
>
> A:  Well, they asked me the questions and everything.
>
> Q:  Okay, and so then and then you would tell you -- you would answer their question and they would write down the answer?
>
> A:  Yes, sir.

(Tr. 60-61).

The above testimony clearly establishes that Dr. Cohen did not complete the medical source statement attributed to him. Rather, it was completed by a social worker, who does not constitute an acceptable medical source. *See, e.g., Marijanovic v. Comm'r of Soc. Sec.*, No. 17-1282, 2017 WL 8231367, at *1 (6th Cir. Oct. 30, 2017) (observing that a social worker does not qualify as an "acceptable medical source"); *Whitfield v. Comm'r of Soc. Sec.*, No. 15-6038, 2016 U.S. App. LEXIS 16627, *8 (6th Cir. Jun. 2, 2016) (finding that even a "licensed clinical social worker, is not an '[a]cceptable medical source[],' and thus cannot be considered a treating physician). Moreover, given Plaintiff's testimony, the opinion cannot reasonably be construed as the social worker's own opinion, as the social worker essentially asked Plaintiff questions (presumably about his limitations or the treatment he had received), and the social worker appears to have accepted those answers at face value, at least if Plaintiff's testimony on this issue is credited.

In sum, the ALJ did not consider the medical source statement to be from Dr. Cohen himself—a finding that this court cannot find fault with and with which it agrees. The treating physician rule applies only to opinions that are *actually* the opinions of the physician rather than the self-reported limitations of a claimant. Even if Dr. Cohen had completed the form himself but had acknowledged that the answers therein were based entirely upon his patient's reports, no authority cited by Plaintiff or any authority of which this court is aware would require an ALJ to ascribe any special significance to such an opinion.[3]

---

[3] Plaintiff's conclusory statement—that because Dr. Cohen signed the form, he must have adopted those limitations—is unconvincing. (R. 12, PageID# 1776). As support, Plaintiff cites a Southern District of Ohio decision that found SSR 96-2p "does not distinguish between opinions filled out and signed by a treating psychiatrist and opinions filled out by a social worker and then signed—and thus adopted—by a treating psychiatrist." *Robinson v. Comm'r of Soc. Sec.*, No. 2:14-cv-1682, 2015 U.S. Dist. LEXIS 133576, at *9 (S.D. Ohio Sept. 30, 2015). But as the

To the contrary, a number of courts have found that a physician's opinion, where it is "premised to a large extent upon the claimant's own accounts of [her] symptoms and limitations may be disregarded where those complaints have been properly discounted." *Reinertson v. Barnhart*, 127 Fed. App'x 285, 290 (9th Cir. 2005) (internal quotation marks omitted) (*citing Morgan v. Comm'r of Soc. Sec.*, 169 F.3d 595, 602 (9th Cir. 1999)); *see also Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 391 (6th Cir. 2004) (finding that ALJ did not err by disregarding the opinion of a treating physician where the limitation in question appeared to be based not upon his own medical conclusion, but upon the conclusion of a different doctor and the claimant's self-assessment); *Tate v. Comm'r of Soc. Sec.*, 467 Fed. App'x 431, 433 (6th Cir. 2012) (finding no error where the ALJ discounted a treating doctor's opinion because there were substantial gaps in treatment and where the doctor's assessment appeared to be based on claimant's subjective complaints without sufficient support from objective clinical or neurological findings); *see also Poe v. Comm'r of Soc. Sec.*, 342 Fed. Appx. 149, 156 (6th Cir. 2009) (finding treating physician's opinion was not entitled to deference where it was based on claimant's subjective complaints); *accord Rogers v. Astrue*, 2012 WL 639473 at *4 ("Simply recording Plaintiff's subjective complaints is not objective medical data....").

In addition, the ALJ's decision determined that Plaintiff was not entirely credible,[4]  which is

---

underlying magistrate judge's report and recommendation makes clear, *Robinson* is distinguishable on the facts. *Robinson v. Comm'r of Soc. Sec.*, No. 2:14-cv-1682, 2015 WL 1929671, at *3-4 (S.D. Ohio Apr. 28, 2015). In that case, the social worker testified at the administrative hearing that she and the treating doctor spent thirty to forty-five minutes completing the assessment, which was based on their personal observations and signed by both. In this case, the record does not demonstrate that Dr. Cohen completed the form, reviewed the completed form, or that the form was based on more than Plaintiff's subjective responses. Without more, the Court cannot find fault with the ALJ's determination.

[4] Tr. 28 (concluding, "As for the claimant's statements about the intensity, persistence, and

a determination that is entitled to considerable deference. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Because the ALJ determined that Plaintiff was not entirely credible, it was not unreasonable for the ALJ to discount an opinion, whether construed as a medical source opinion or not, that was based on Plaintiff's self-reports. Plaintiff's third assignment of error, therefore, is without merit.

### 2. Hand-Held Assistive Device

In the first assignment of error, Plaintiff asserts the ALJ erred when he excluded the use of an assistive device from the RFC, and further failed to meaningfully discuss the evidence supporting Plaintiff's cane and/or walker use. (R. 12, PageID# 1761). The Commissioner responds by arguing that applicable social security rulings and caselaw suggest that the use of a hand-held assistive device will only be found necessary when established by medical documentation. (R. 13, PageID# 1789-1790).

Plaintiff's brief cites the following evidence, which he believes establishes that the use of a hand-held assistive device was necessary:

- On July 5, 2017, Plaintiff told Nicholas Ahn, M.D., that he had weakness and numbness in his legs resulting in great difficulty standing/walking, and that he could not walk without a cane. (Tr. 597). On examination, Dr. Ahn noted that Plaintiff's lower extremity reflexes were absent, there was no ataxia, and Plaintiff walked with a markedly antalgic gait, leaning heavily on a cane. *Id*. He had a markedly positive "shopping cart sign."[5] *Id*.

- On July 21, 2017, Dr. Ahn performed bilateral laminectomies and fusion surgery. (Tr. 643). On discharge, Plaintiff had difficulty with walking and balance, but was improving. (Tr. 689).

---

limiting effects of his symptoms, they are inconsistent because the objective evidence does not show that the claimant's symptoms are as limiting as he alleges.").

[5] "Patients with spinal stenosis often like to lean on the grocery cart at the store. We call this the 'shopping cart' sign!" https://www.spineuniverse.com/conditions/spinal-stenosis/anatomy-spinal-stenosis (date last visited December 9, 2020).

• On August 30, 2017, Dr. Ahn observed that weakness in Plaintiff's legs had resolved with 5/5 strength. (Tr. 1043). He was walking with a "much more normal gait." (Tr. 1043).

• On October 12, 2017, Plaintiff reported for physical therapy complaining of bilateral lower extremity pain since his back surgery. (Tr. 1394). He indicated that previously he had been able to walk with a cane but now needed a walker. *Id.*

• On November 29, 2017, Dr. Ahn noted that Plaintiff had not started physical therapy and was non-compliant with smoking cessation. (Tr. 1113).

• On January 3, 2018, Plaintiff told Melinda Lawrence, M.D., that his pain had improved since his surgery, but that he continued to experience pain, weakness, and numbness in his legs and feet. (Tr. 1330). On examination, Dr. Lawrence noted Plaintiff had an antalgic gait and used a cane. (Tr. 1333).

• On June 6, 2018, Plaintiff reported ongoing pain to Dr. Ahn, but denied radicular pain down the lower extremity, and he also denied numbness, tingling, or weakness in the legs. (Tr. 1374). Dr. Ahn's examination findings were normal. *Id.*

• On June 24, 2018, Dr. Lawrence again noted Plaintiff had an antalgic gait and used a cane. (Tr. 1325). She diagnosed lumbar post-laminectomy syndrome. *Id.*

• On August 6, 2018, Jenice Robinson, M.D., observed that Plaintiff had a functional gait, which was "cautious and unsteady at times, with lurching to right and left sides …." (Tr. 94). Dr. Robinson further noted that "[g]ait was narrow based. He was able to maintain his balance with eyes closed, then after some time lurched to the side." *Id.*

• On September 29, 2018, Plaintiff underwent a right transmastoid labyrinthectomy for active Meniere disease. (Tr. 1485). Plaintiff was discharged five days later and walked independently, but with an unsteady gait, vertigo symptoms, and cane-use. (Tr. 77). It was noted that Plaintiff will "likely need a [skilled nursing facility] for rehab" to address balance and gait instability." *Id.*

• On November 29, 2018, emergency room notes indicate that Plaintiff reported using a walker due to chronic dizziness caused by Meniere's disease. (Tr. 219). On physical examination, Plaintiff's extremities had "Normal appearance, Full ROM, Sensation intact, Motor Intact, No vascular compromise, Tendon function NML, No tenderness, No pedal edema, Symmetrical, Normal gait." (Tr. 223).

• On December 7, 2018, Dr. Cohen ostensibly completed a checklist-style medical source statement, wherein it is noted that a cane, walker and brace had been prescribed. (Tr. 1543-1544, Exh. 29F). At the hearing, as discussed above, Plaintiff testified that a social worker filled out that form, Exhibit 29F, based on his own answers. (Tr. 61).

- At the hearing, Plaintiff testified that his roller walker was prescribed after his surgery for Meniere's disease, and that he was still using it at the time of the hearing in January of 2019. (Tr. 47, 51).

Pursuant to Social Security Ruling 96-9p ("SSR 96-9p"), clear medical evidence is required before the need for a cane may be incorporated into an RFC finding. 1996 WL 374185 (Jul. 2, 1996). SSR 96-9p states as follows:

> **Medically required hand-held assistive device**: *To find that a hand-held assistive device is medically required, there **must** be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, **and** describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information).* The adjudicator must always consider the particular facts of a case. For example, if a medically required hand-held assistive device is needed only for prolonged ambulation, walking on uneven terrain, or ascending or descending slopes, the unskilled sedentary occupational base will not ordinarily be significantly eroded.
>
> Since most unskilled sedentary work requires only occasional lifting and carrying of light objects such as ledgers and files and a maximum lifting capacity for only 10 pounds, an individual who uses a medically required hand-held assistive device in one hand may still have the ability to perform the minimal lifting and carrying requirements of many sedentary unskilled occupations with the other hand. For example, an individual who must use a hand-held assistive device to aid in walking or standing because of an impairment that affects one lower extremity (*e.g.*, an unstable knee), or to reduce pain when walking, who is limited to sedentary work because of the impairment affecting the lower extremity, and who has no other functional limitations or restrictions may still have the ability to make an adjustment to sedentary work that exists in significant numbers. On the other hand, the occupational base for an individual who must use such a device for balance because of significant involvement of both lower extremities (*e.g.*, because of a neurological impairment) may be significantly eroded.

SSR 96-9p (emphasis added).

The court finds no reversible error with respect to the ALJ's decision to omit the need for a hand-held assistive device from the RFC. While Plaintiff is correct that the ALJ's decision does not contain a single section discussing Plaintiff's use of a hand-held assistive device or make

specific reference to SSR 96-9p, the ALJ did note Plaintiff's use of such devices and his antalgic gait in several portions of the decision. (Tr. 27, 28, 30). Moreover, SSR 96-9p essentially contains two requirements before an ALJ may conclude that a hand-held assistive device is "medically required." First, there must be medical documentation establishing the need for said device to aid in walking/standing; and second, the medical documentation must also "describ[e] the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information.)" 1996 WL 374185 at *7. Numerous court decisions have considered a plaintiff's testimony regarding the use of assistive devices, but found it unavailing when the record lacked supporting medical documentation demonstrating the requirement for such a device. *See, e.g., Tripp v. Astrue*, 489 Fed. App'x 951, 955 (7th Cir. 2012) (finding the record supported the ALJ's finding that a cane or crutch was *not* a "medical necessity" where the record contained only the claimant's self-reports of cane use and physicians' observations that claimant used a cane); *Blackburn v. Colvin*, No. 1:15cv1398, 2016 WL 4821766 at *5 (N.D. Ohio Sept. 15, 2016) (noting that Plaintiff's use of crutches and a wheelchair to ambulate were not supported by medical documentation, as required by Social Security Ruling 96-9p) (Pearson, J.); *Robinson v. Comm'r of Soc. Sec.*, No. 5:14-cv-291, 2015 WL 1119751 at *15 (N.D. Ohio Mar. 11, 2015) (finding that a physician's mere observation that claimant used a cane was insufficient to establish the cane was a medical necessity because physician's "treatment notes do not reflect a prescription for a cane") (McHargh, M.J.).[6]

---

[6] Although Plaintiff testified that he needed a cane or walker to ambulate, his testimony alone is insufficient under Social Security Ruling ("SSR") 96-9p, 1996 WL 374185 (Jul. 2, 1996). *See, e.g., Mitchell v. Comm'r of Soc. Sec.*, No. 4:13cv1969, 2014 WL 3738270 (N.D. Ohio Jul. 29, 2014) (finding that Plaintiff's testimony did not qualify as "medical documentation establishing the need" for the cane under SSR 96-9p) (Pearson, J.); *Smith v. Astrue*, No. 2:11-0065, 2012 WL 4329007 at *8 (M.D. Tenn. July 16, 2012), *report and recommendation adopted*, 2012 WL

Plaintiff's hearing testimony, on its own, does not qualify as medical documentation and is insufficient to establish that a cane was medically required. It is true that several medical sources noted that Plaintiff was using these devices, though only Dr. Cohen's medical source statement indicates that a cane and walker were prescribed. However, as discussed above, Dr. Cohen's medical source statement was actually completed by a social worker using answers provided by Plaintiff himself. (Tr. 30, 61). It is doubtful that a social worker's statement, especially where it is based on Plaintiff's responses, would qualify as medical documentation because, as stated above, social security regulations do not recognize social workers as acceptable medical sources.

Nevertheless, even assuming *arguendo* that the medical documentation of record was sufficient to establish the first part of the SSR 96-9p test, none of the medical documentation cited by Plaintiff "describe[es] the circumstances for which [a cane] is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." Plaintiff fails to draw this court's attention to any *medical records documenting and describing the circumstances for which a cane is needed* as required by SSR 96-9p.[7] *See,*

---

4328993 (M.D. Tenn. Sept. 20, 2012) ("Even if the ALJ had not discussed the use of the cane, Plaintiff failed to provide medical documentation of its requirement. The only evidence supporting a cane requirement comes from Plaintiff's testimony.")

[7] While the court has reviewed pertinent portions of the approximately 1,600-page transcript identified by the parties, it has not found any medical documentation that could reasonably be construed as describing the circumstances for which a cane or walker is needed. Nevertheless, the onus remains on Plaintiff and not the court to identify evidence supporting his assignments of error. *See, e.g., Paul v. Comm'r of Soc. Sec.*, No. 2:13cv14911, 2015 WL 1299980 at *1 (E.D. Mich. Mar. 23, 2015) ("[P]laintiff cannot simply make bald claims that the ALJ erred, while leaving it to the Court to scour the record to support this claim."); *Nash v. Comm'r of Soc. Sec.*, No. 1:12 CV 2234, 2013 WL 4736736, at *3 (N.D. Ohio Sept. 3, 2013) ("it is not this Court's function to scour the administrative record and craft arguments on Plaintiff's behalf."); *Crocker v. Comm'r of Soc. Sec.*, No. 1:08cv1091, 2010 WL 882831 at *6 (W.D. Mich. Mar. 9, 2010) ("This court need not make the lawyer's case by scouring the party's various submissions to

*e.g., Perry v. Berryhill*, No. 1:16CV2970, 2018 WL 1393275, at *4 (N.D. Ohio Mar. 20, 2018) ("Nor does Plaintiff cite to any medical records describing the circumstances for which a cane is needed as required by SSR 96–9p.") (Limbert, M.J.) (*citing Parrish v. Berryhill*, No. 1:16CV1880, 2017 WL 2728394 (N.D. Ohio June 8, 2017)).

The court finds Plaintiff has failed to demonstrate the medical documentation of record shows a hand-held assistive device is medically required under SSR 96-9p, because no medical documentation is identified that describes the circumstances for which a hand-held assistive device is needed. Therefore, Plaintiff's argument that the ALJ erred by omitting the need for a such a device from the RFC is not well taken.

### 3. Whether an RFC for Light Work is Supported by Substantial Evidence

In the second assignment of error, Plaintiff asserts the ALJ erred by finding he could perform light work. (R. 12, PageID# 1764-1771). The Commissioner disagrees, contending that substantial evidence supports the ALJ's finding that Plaintiff could perform light work (with some additional postural, environmental, and mental limitations). (R. 13, PageID# 1791-1797).

First, the ALJ's determination that Plaintiff could perform light exertional work is supported by the opinions of State Agency physicians Sreenivas Venkatachala , M.D., and William Bolz, M.D. On September 25, 2017, Dr. Venkatachala completed a physical RFC assessment and opined that Plaintiff could lift/carry twenty pounds occasionally and ten pounds frequently, as well as stand/walk and sit for six hours each in an eight-hour workday. (Tr. 284-287).[8] Dr. Venkatachala further opined Plaintiff could never climb ladders/ropes/scaffolds and

_____

piece together appropriate arguments.")

[8] Dr. Venkatachala explained that Plaintiff recently had L3-S1 decompression surgery in July of 2017 and that "weakness in his legs has resolved and he has 5/5 strength. Radicular pain has

had frequent or unlimited ability with all other postural due to vertigo and Meniere disease. (Tr.

285). Dr. Venkatachala also prohibited concentrated exposure to hazards and a noisy work

environment, the latter due to hearing loss. (Tr. 286). On January 10, 2018, Dr. Bolz also

completed a physical RFC assessment that yielded the same pertinent limitations as assessed by

Dr. Venkatachala. (Tr. 328-331). The ALJ found these opinions persuasive, "as they are

consistent with and supported by objective evidence of record." (Tr. 29).

Plaintiff takes issue with the ALJ assigning greater weight to the opinions of the State

Agency physicians, than the alleged opinion of Dr. Cohen. (R. 12, PageID# 1774). However, the

court already addressed Dr. Cohen's "opinion" and found the ALJ properly rejected it. Plaintiff

also takes issue with the fact that the last State Agency physician's opinion was rendered over

twelve months prior to the hearing and did not take into account additional treatment, especially

regarding Meniere's disease.[9] *Id.* "There is no regulation or case law that requires the ALJ to

reject an opinion simply because medical evidence is produced after the opinion is formed.

Indeed, the regulations provide only that an ALJ should give more weight to an opinion that is

consistent with the record as a whole." *Williamson v. Comm'r of Soc. Sec.*, No. 1:11cv828, 2013

*WL 121813 at *6 (S.D. Ohio Jan. 9, 2013)*, *report and recommendation adopted*, 2013 WL

1090303 (S.D. Ohio Mar. 15, 2013). Plaintiff cites an inapposite decision, *Blakley v. Comm'r of*

*Soc. Sec.*, 581 F.3d 399, 407-409 (6th Cir. 2009), which held that an ALJ erred by failing to

---

improved. [Normal] sensation w/ marked improvement from his pre-op state. He is walking w/ a
much more [normal] gait," and will not need a cane twelve months after surgery. (Tr. 285).

[9] It bears noting that some of the restrictions assessed by the State Agency physicians were
actually attributed to Meniere's disease. (Tr. 285, 329). Thus, those sources were clearly aware
of said diagnosis and considered its resulting limiting effects.

adequately explain the reasons for rejecting the opinions of three separate treating sources.[10]
Plaintiff "misconstrues the Court's holding in *Blackley v. Commissioner of Social Security* as
providing a blanket prohibition on an ALJ's adoption of a non-examining source opinion, where
that source has not reviewed the entire record." *Kepke v. Comm'r of Soc. Sec.*, 636 Fed. App'x
625, 632 (6th Cir. 2016).

Plaintiff also contends the ALJ cherry-picked the evidence to fit the RFC determination. (R.
12, PageID# 1764). Such arguments are unavailing and rarely successful. The Sixth Circuit has
found that a claimant's allegation of cherry-picking evidence by an ALJ unavailing on appeal,
agreeing with the court below that such an "allegation is seldom successful because crediting it
would require a court to re-weigh record evidence." *DeLong v. Comm'r of Soc. Sec. Admin.*, 748
F.3d 723, 726 (6th Cir. Apr. 3, 2014) (*citing White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th
Cir. 2009) (finding "little indication that the ALJ improperly cherry picked evidence; the same
process can be described more neutrally as weighing the evidence.")); *accord Hammett v.
Comm'r of Soc. Sec.*, No. 16-12304, 2017 WL 4003438, at *3 (E.D. Mich. Sept. 12, 2017);
*Cromer v. Berryhill*, No. CV 16-180-DLB, 2017 WL 1706418, at *8 (E.D. Ky. May 2, 2017);
*Anderson v. Berryhill*, No. 1:16CV01086, 2017 WL 1326437, at *13 (N.D. Ohio Mar. 2, 2017),

---

[10] After finding error with respect to the ALJ's lack of consideration of several treating
physicians, who are considered "acceptable medical sources" per the regulations, the Sixth
Circuit observed that "the ALJ's decision to accord greater weight to state agency physicians
over Blakley's treating sources was not, by itself, reversible error." *Blakley*, 581 F.3d at 409. The
Court merely explained that the decision should reflect that the ALJ at least considered the "over
300 pages of medical evidence reflect[ing] ongoing treatment and notes by Blakley's treating
sources" before giving greater weight to the non-examining physicians over the treating
physicians. *Id.* Plaintiff's reliance on *Blakely* is misplaced because Plaintiff does not identify any
*treating physician* opinions—other than Dr. Cohen's opinion based on Plaintiff's self-reports—
that post-date the state agency sources *and* were perfunctorily rejected by the ALJ.

*report and recommendation adopted*, 2017 WL 1304485 (N.D. Ohio Apr. 3, 2017). To the

contrary, it is the responsibility of the ALJ to resolve the conflicts in the record where there are

conflicting opinions resulting from essentially the same medical data. *See, e.g., Martin v.*

*Comm'r of Soc. Sec.*, 170 Fed. App'x 369, 373 (6th Cir. 2006) ("The ALJ had the duty to resolve

conflicts in medical evidence"); *Crum v. Sullivan*, 921 F.2d 642, 645 (6th Cir. 1990); *see*

*generally Webb v. Commissioner*, 368 F.3d 629, 633 (6th Cir. 2004) (ALJ's responsibility to

evaluate medical evidence and claimant's testimony to assess RFC). "It is the duty of the ALJ, as

the trier of fact, to resolve conflicts in the medical evidence." *Hensley v. Astrue*, No. 12-106,

2014 WL 1093201 at *4 (E.D. Ky. Mar. 14, 2014) *citing Richardson v. Perales*, 402 U.S. 389,

399 (1971)). "It is the ALJ's place, and not the reviewing court's, to resolve conflicts in

evidence." *Collins v. Comm'r of Soc. Sec.*, 357 F. App'x 663, 670 (6th Cir. 2009) (citations

omitted).

Plaintiff contends that the ALJ ignored significant portions of the record concerning

Meniere's disease, degenerative disc disease, and left shoulder pain, which, in Plaintiff's view,

preclude light exertional work. (R. 12, PageID# 1765-1771). The Sixth Circuit Court of Appeals

has explained that:

> [An] ALJ [is] not required to explain every piece of evidence in the record [or]
> address each check mark from the Physician's Reports. An "ALJ can consider all
> the evidence without directly addressing in his written decision every piece of
> evidence submitted by a party." *Loral Defense Sys.-Akron v. NLRB*, 200 F.3d 436,
> 453 (6th Cir. 1999) (explaining that "[a]lthough the ALJ's decision in this case
> may not be a model of clarity and detail, . . . the ALJ's treatment of the evidence
> in this case is more than amply supported by the record as a whole"); *see also Her*
> *v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the
> evidence could also support another conclusion, the decision of the
> Administrative Law Judge must stand if the evidence could reasonably support
> the conclusion reached.").

*Bayes v. Comm'r of Soc. Sec.*, 757 Fed. App'x 436, 445-46 (6th Cir. 2018); *see also Conner v.*

*Comm'r of Soc. Sec.*, 658 Fed. App'x 248, 254 (6th Cir. 2016) ("[W]e do not require an ALJ to discuss every piece of evidence in the record to substantiate the ALJ's decision.") (*citing Thacker v. Comm'r of Soc. Sec.*, 99 Fed. App'x 661, 665 (6th Cir. 2004)).

Moreover, the ALJ did not ignore evidence concerning Plaintiff's Meniere's disease, degenerative disc disease, and left shoulder pain. To the contrary, the ALJ included degenerative disc disease, degenerative joint disease, and vertigo/Meniere's disease among Plaintiff's severe impairments. (Tr. 21). In addition, the ALJ discussed these conditions and objective test results that post-dated the State Agency physicians' opinions. (Tr. 27-28). Thus, the ALJ was not relying simply on what Plaintiff considers outdated opinions.

Finally, to the extent Plaintiff asks the court to override the ALJ's weighing of the State Agency medical opinions that Plaintiff is capable of light work, based on Plaintiff's own interpretation of the medical evidence that post-dates those opinions, the court declines to do so. Such an argument is tantamount to an invitation for this court to reweigh the evidence, overrule the State Agency opinions based on this court's lay interpretation of the medical evidence, and to find that the RFC for light exertional work—with additional limitations—is unsupported. This court's role in considering a social security disability appeal, however, does not include reviewing the evidence *de novo*, making credibility determinations, or reweighing the evidence. *Brainard*, 889 F.2d at 681; *see also Stief v. Comm'r of Soc. Sec.*, No. 16-11923, 2017 U.S. Dist. LEXIS 147362, 2017 WL 4973225, at *11 (E.D. Mich. May 23, 2017) ("Arguments which in actuality require 're-weigh[ing] record evidence' beseech district courts to perform a forbidden ritual."), *report and recommendation adopted*, 2017 U.S. Dist. LEXIS 146332, 2017 WL 3976617 (E.D. Mich. Sept. 11, 2017). Although the court does not foreclose the possibility that in certain cases the facts of record so blatantly contradict the RFC that a remand is warranted, the

court does not find this is such a case based on the facts herein.

Plaintiff's final assignment of error is without merit.

### V. Conclusion

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

IT IS SO ORDERED.

s/ *David A. Ruiz*

David A. Ruiz
United States Magistrate Judge

Date: March 25, 2021